493 A.2d 699

**Gretchen OSWALD, Appellant,**

v.

**Evelyn M. OLDS.**

Superior Court of Pennsylvania.

Argued Aug. 6, 1984.

Filed April 4, 1985.

Robert N. Clarke, Washington, appellant.

Sidney Baker, Pittsburgh, for appellee.

Before BROSKY, WATKINS and HESTER, JJ.

BROSKY, Judge:

This appeal is from an order sustaining appellee's preliminary objections in an action over the right to the proceeds

of a life insurance policy. The Court of Common Pleas of Washington County concluded that venue over this case did not lie with it.[1] The court erred in that regard. We hold that venue was proper.

On the substantive issue concerning the change in beneficiary and the proceeds of an insurance policy, we note that once appellant had notice of the beneficiary change, she should then have challenged that alteration, a right given her under the Divorce Code. In the instant case, having not done so for nearly a year, and death occurred in the meantime, she can not now be heard to assert it after her husband's death since the divorce action abated upon death. As equitable distribution is an incident of divorce, her right to that also ceased with her husband's death. Furthermore, the proceeds of a life insurance policy on a spouse cannot, by its nature, be property acquired during the marriage since it comes into being upon death and cannot, therefore, be marital property subject to equitable distribution.

The relevant facts are as follows. Appellant and the decedent, Isaac John Haviland, were married at the time a life insurance policy on Haviland was purchased from New York Life Insurance Company. Appellant was the designated beneficiary of this policy. In August of 1981 appellant commenced a divorce action. Subsequent to receiving process of this action, Haviland changed the beneficiary of the policy from appellant to appellee. Appellant was made aware of this change through answers to interrogatories in the divorce proceeding on March 23, 1982. However, during the next eleven months she made no objection in court to that change. Haviland died in February of 1983 while the divorce action was still in progress. Appellant then commenced suit against the carrier and the new beneficiary.

1. The Court of Common Pleas also went on to rule on the merits of appellant's case, against her. Of course, once it had decided that venue was not in Washington County, it was improper for the trial court to treat the substantive question. However, since the court below has done so and since we conclude that venue was proper, we will treat not only the venue issue, but also the case on its merits.

The carrier has since been allowed to withdraw from the case, with the proceeds of the policy being placed in escrow.

## Venue

The court below found venue was improper in Washington County. We find that this was in error. This action was brought against appellee, a resident of nearby Allegheny County, and against the insurance carrier, a foreign corporation. Under Pa.R.C.P. 1006(c), an action can be brought where venue against one of the co-defendants is proper. *Ro-Med Constr. Co. v. Bartley Co.*, 239 Pa.Super. 311, 361 A.2d 808 (1976). Venue here was proper against the carrier. See Pa.R.C.P. 2179(a)(2). The fact that the carrier was subsequently dropped from the case is of no import vis-a-vis venue, as venue is evaluated from the point when service is properly or improperly made. *Slezynger v. Bischak*, 224 Pa.Super. 552, 307 A.2d 405 (1973). Having concluded that venue was proper, we will now go on to consider the case on its merits.

## Change of Beneficiary

Appellant argues that the decedent improperly changed the beneficiary of his life insurance policy from herself to appellee. It was the pendency of the divorce action between herself and the decedent, she contends, which made this change impermissible. This is not a correct statement of the law. Appellee's decedent did not lack the ability to change the beneficiary during the pendency of the divorce proceedings; he only lacked the ability to change the status without notifying appellant. While appellant was not notified at the time the change was made, she was notified at a later time through Interrogatories requested by her counsel. Appellant then had nearly a year in which she could have challenged that change.[2] She did

2. See *Lazovitz v. Lazovitz*, 307 Pa.Super. 341, 351–2, 453 A.2d 615, 619–20 (1982) and 23 Pa.C.S. § 401(i).

not do so and, accordingly, waived her right to do so when death of the insured occurred. Absent a court order preventing or rescinding the beneficiary change, appellee's decedent had the right to change the beneficiary designation. *Provident Mutual Insurance Co. of Phila. v. Ehrlich*, 508 F.2d 129, 134 (3rd Cir.1975).

■ Upon the death of appellee's decedent, the divorce action abated. *Haviland v. Haviland*, 333 Pa.Super. 162, 481 A.2d 1355 (1984); *Upperman v. Upperman*, 119 Pa.Super. 341, 181 A. 252 (1935). As a consequence of that abatement she can no longer assert her rights under the Divorce Code, including equitable distribution rights.

■ Even if appellant's right to equitable distribution did not cease with the abatement of the divorce action by appellee's decedent's death, the proceeds would still not constitute marital property, which is defined as property acquired during the marriage. 23 Pa.C.S. 401(f). The proceeds of a life insurance policy on a spouse cannot, obviously, be acquired during the marriage since proceeds are paid upon death. Consequently, that is not an asset acquired during lifetime or marriage. While the potential of subsequently acquiring the proceeds did, naturally, arise during the marriage, that could never arise to an actuality during the marriage.[3]

Order affirmed.

---

**3.** Under a similar statute, the Superior Court of our sister state of New Jersey came to the same result. *Corrigan v. Corrigan*, 390 A.2d 141 (1978). While *Corrigan* relied on some language peculiar to its equitable distribution statute, we consider it worthy of note here.

Appellee concedes that prior to appellant's death the cash surrender value of the policy was marital property. However, that value became non-operative since the cash surrender value merges with the proceeds on death.