580 A.2d 1351

**Anna Elisabeth Uta Roeber SCHUBERT a/k/a Uta Schubert, Appellant,**

**v.**

**John Denney SCHUBERT.**

Superior Court of Pennsylvania.

Argued March 6, 1990.

Filed Sept. 27, 1990.

Reargument Denied Nov. 2, 1990.

David E. Auerbach, Medi, for appellant.

Alan B. Portnoff, Paoli, for appellee (Submitted).

Before MCEWEN, MONTEMURO and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from an amended order of the Delaware County Court of Common Pleas dated July 19, 1989. We reverse in part, affirm in part and remand for disposition consistent with this opinion.

On July 6, 1988, the lower court entered an order and opinion determining the equitable distribution of the marital property of appellant Anna Elisabeth Uta Schubert and appellee John Denney Schubert.[1] In an opinion dated July 24, 1989, the lower court dismissed appellant's exceptions to this order. Appellant files this timely appeal.

The pertinent facts are as follows. Appellant and appellee were married on March 29, 1963 and separated on February 23, 1984. Two children were born to the couple during the marriage. Unfortunately, the parties' daughter Audrey died as a result of an automobile accident that occurred in July of 1984.

Appellant raises four (4) issues for our consideration. First, appellant states that the lower court erroneously failed to consider certain marital property with regard to its equitable distribution decision. Second, appellant argues that the lower court failed to properly follow the divorce

1. Subsequently, the lower court entered a second amended order on October 20, 1988. According to the lower court, this order was provided to correct typographical errors contained in the original order dated July 6, 1988 as well as the first amended order of July 19, 1988. Our review of the orders reveals that the second amended order changed the number of Honeywell stock shares that were to be considered pursuant to the equitable distribution. In the original order, the court listed one hundred and fifty seven (157) shares as marital assets: in contrast, fifty seven (57) shares were listed as marital assets in the second order. Additionally, the second amended order modified its categorization of a fund of ten thousand eight hundred forty-five dollars and four cents ($10,845.04) which had previously been listed as a pension plan. In its order of October 20, 1988, the court listed these funds as a Honeywell savings plan.

code in determining the equitable distribution of the marital assets. Third, appellant contends that the lower court erred in failing to award her alimony. Finally, appellant argues that the lower court erred in failing to require husband to pay her counsel fees and expenses.

■ The scope of appellate review of orders concerning equitable distribution, alimony, counsel fees and costs is limited to finding whether there is an abuse of discretion or error of law on the part of the lower court; absent an abuse of discretion by the trial court, the award will not be disturbed. *Ganong v. Ganong*, 355 Pa.Super. 483, 513 A.2d 1024 (1986). Guided by this stringent standard of review, we shall examine appellant's contentions *seriatim.*

First, appellant argues that the lower court failed to consider and include certain marital property with regard to its equitable distribution decision. Appellant also challenges the valuation of other assets considered by the court. The relevant assets are as follows:

Metropolitan Life Insurance Policy;

Bankers Life and Casualty Policy;

Travelers Insurance Policy;

Honeywell Stock Savings Plan;

Retirement Savings Plan;

Honeywell Accrued Vacation;

Assets concealed by appellee.

Our review of the record reveals that the parties received twenty-one thousand five hundred dollars ($21,500.00) in proceeds from the aforementioned Metropolitan Life Insurance Policy. This policy was taken on the life of the parties' deceased daughter. While the parties agree that the policy constituted marital property, they differ concerning the amount of money that should be deducted for funeral expenses.[2]

2. In her appellate brief, appellant implies that she would not contest the deduction of the actual funeral costs if we were to reverse the lower court and find that the Traveler's and Banker's insurance policies' proceeds constitute marital property. Although we find for appellant with regard to the Traveler's and Banker's policies' proceeds,

■ Appellant contends that twenty thousand dollars ($20,000.00) of this amount should be considered marital property. Citing the Pennsylvania No–Fault Motor Vehicle Insurance Act,[3] appellant argues that only one thousand five hundred dollars ($1,500.00) may be deducted from the insurance proceeds for funeral expenses. The lower court, however, rejected this argument and deducted the actual costs of the funeral, five thousand two hundred dollars and ninety-six cents ($5,200.96). Reviewing the chronology of this case, we find no merit to appellant's contention.

Our review reveals that the parties indeed expended a total amount of five thousand two hundred dollars and ninety-six cents ($5,200.96) for funeral expenses prior to the commencement of their divorce proceedings. As noted by the lower court, these expenses were incurred by consensus of the parties. Nevertheless, appellant argues that the lower court erroneously deducted five thousand two hundred dollars and ninety-six cents ($5,200.96) for funeral expenses from the Metropolitan policy since only one thousand five hundred dollars ($1,500.00) could be deducted in accordance with the No–Fault Act. Under the definition section of the No–Fault Act, we find as follows:

"§ *1009.103 Definitions*

"As used in this act:

" '*Allowable expense*' means reasonable charges incurred for, or the reasonable value of (where no charges are incurred) reasonably needed and used products, services, and accommodations for:

. . . . .

"(D) expenses directly related to the funeral, burial, cremation, or other form of disposition of the remains of a deceased victim, not to exceed one thousand five hundred dollars ($1,500) ...

The aforementioned statute is not binding upon this Court with regard to an equitable distribution determination. In-

we nevertheless include this discussion to clarify our position on this issue.

**3.** 40 P.S. §§ 1009.101 *et seq., repealed,* P.L. 26 No. 11, § 8(a), 2/12/84.

stead, this No–Fault limitation concerns the total amount an insured may receive from their insurance company. While the parties may have only received one thousand five hundred dollars ($1,500.00) for funeral expenses from the Metropolitan policy in accordance with the No–Fault act, the grieving parents were not bound to limit their spending in memory of the deceased to this amount. Therefore, we find that the sum of sixteen thousand two hundred ninety-nine dollars and four cents ($16,299.04) constitutes the proper valuation of the Metropolitan policy as a marital asset since the parties spent five thousand two hundred dollars and ninety-six cents ($5,200.96) on funeral expenses pursuant an agreement made prior to the equitable distribution process.

■ Appellant next argues that the lower court erroneously failed to find the proceeds from the Banker's and Traveler's policies marital assets subject to equitable distribution. These policies, like the aforementioned Metropolitan Life policy, were taken on the life of the deceased daughter. Each named appellee as the sole beneficiary. Upon the insured's death, the benefits of these policies accrued to appellee. Appellant contends that these proceeds constituted mutually owned property since the policies were acquired during the marriage and purchased from marital funds. The lower court rejected this contention. While the court found that the cash surrender value of the *policies* constituted marital assets, it declared that the policies' *proceeds* were not marital property since it accrued to appellee subsequent to the parties' separation. We disagree.

In rendering its decision concerning these insurance policies, the lower court relied heavily upon our decision in *Lindsey v. Lindsey,* 342 Pa.Super. 72, 492 A.2d 396 (1985). In *Lindsey,* we stated that only the cash surrender value of the pertinent life insurance policies could be considered marital property. *Id.,* 342 Pa.Superior Ct. at 77, 492 A.2d at 398. Close scrutiny of the *Lindsey* case, however, reveals the merit of appellant's contention concerning this issue.

In *Lindsey,* husband initially purchased two life policies on himself and named wife sole beneficiary. *Id.,* 342 Pa.Superior Ct. at 74, 492 A.2d at 397. Subsequently, husband and wife separated and wife secured an injunction barring husband from disposing of any marital property. *Id.* Husband then changed the beneficiary designations on the two policies from his wife to another woman. *Id.* Prior to the final divorce decree, husband died. *Id.* The lower court, however, held that the changes in beneficiary designations were in violation of the preliminary injunctions and ordered that wife be named beneficiary. *Id.,* 342 Pa.Superior Ct. at 75, 492 A.2d at 397. On appeal, we reversed this decision.

We explained in *Lindsey* that being named sole beneficiary vested nothing in wife but a mere expectancy during the lifetime of the insured. *Id.,* 342 Pa.Superior Ct. at 76–77, 492 A.2d at 398. When husband changed beneficiary designations, there was no violation of the preliminary injunction since he did not convey any marital assets to a third party. *Id.,* 342 Pa.Superior Ct. at 79, 492 A.2d at 399. Thus, we concluded in *Lindsey* that the life insurance policy could only be valued at its cash value. *Id.,* 342 Pa.Superior Ct. at 78–79, 492 A.2d at 399. Such is not the case here.[4]

While Section 401(f) of our Divorce Code generally provides that all property "acquired by either party during the marriage is presumed to be marital property," Section 401(e)(4) excludes "[p]roperty acquired after final separation until the date of divorce, *except for property acquired in exchange for marital assets* (emphasis added)." This section of the divorce code is applicable here, unlike in *Lindsey,* because appellee/husband received the proceeds of the policy subsequent to the parties' separation. In *Lindsey,* as noted *supra,* the insurance proceeds were paid to a third party. Furthermore, we find that these proceeds constitute marital property subject to equitable distribution since they were acquired in exchange for marital assets.

**4.** In *Lindsey,* however, wife did not receive any portion of the cash surrender value of the policies due to husband's death and abatement of the divorce action and its ancillary claims. *Id.,* 342 Pa.Superior Ct. at 79, 492 A.2d at 399.

In the instant case, appellee received "salary continuation" benefits pursuant to his voluntary early retirement after thirty-seven (37) years of employment with Honeywell Corporation. This "salary continuation" plan consisted of several inducements and benefits designed to entice employees to choose early retirement. During the course of the parties' marriage, the Banker's and Traveler's insurance policies were provided by appellee's employer and were paid in part from deductions from appellee's salary. Pursuant to the early retirement plan, paycheck deductions were continued to pay the premiums of the insurance policies.

Our review of the record reveals that the parties were married for twenty-one (21) years. During this time period, appellee was employed with Honeywell and purchased the relevant life policies. One month after the parties separated, appellee retired. Subsequently, the insurance policies premiums were paid pursuant to the salary continuation plan. Five (5) months after the parties separated, the insured died.

While appellant was not a named beneficiary to the policies, we find that she was entitled to a share of the proceeds. Specifically, we note that the proceeds accrued to appellee only because the salary continuation provided for the continued payment of the pertinent insurance premiums. We find that these salary continuation benefits constituted marital assets since they were based upon appellee's thirty-seven (37) years of service to Honeywell Corporation. Since wife contributed to the family's household for twenty-one (21) years of this time period, we find that she was entitled to a share of appellant's salary continuation. Most importantly, we find that appellant is entitled to a share of the proceeds of the aforementioned insurance policies since we find that the policies were not only purchased but *maintained* with marital funds. Thus, we find that the lower court abused its discretion with regard to the Banker's and Traveler's insurance policies proceeds and reverse with regard to this issue.

Turning to appellant's next allegation of lower court error, we fail to find merit to appellant's contention concerning appellee's alleged hidden assets. In contrast, the record reveals that the lower court provided appellant with ample opportunity to unveil any assets concealed by appellee. Since we find no merit to this contention, we affirm with regard to this issue on the basis of the lower court's July 6, 1988 opinion.

In inter-related arguments, appellant states that the lower court erred in appraising the marital share of the Honeywell Stock Savings Plan and the Retirement Savings Plan. Our review reveals that these plans were also provided pursuant to appellee's early retirement. Appellant also contends that the lower court erroneously omitted appellee's accrued vacation pay from the equitable distribution. With regard to the stock savings plan, appellant states that the lower court erroneously found fifty-seven (57) shares of the stocks with a value of ($3,188.48) subject to equitable distribution. Appellant argues that one hundred fifty-seven (157) shares constitute the marital assets of the parties.

Appellant states that the lower court also erred in valuating the savings plan at ten thousand eight hundred forty-five dollars and four cents ($10,845.04). This plan, appellant concludes, should have been valued at fifteen thousand four hundred ninety-two dollars and ninety-two cents ($15,-492.92).

■ Our careful review of the record reveals that the lower court failed to address these contentions although the issues were raised in appellant's exceptions to the equitable distribution order. In light of these omissions, we now remand to the lower court so that it may articulate its reasons for rejecting these arguments in accordance with Pa.R.A.P., Rule 1925(a).

Second, appellant contends that the lower court erred in failing to properly follow the dictates of our Commonwealth's divorce code in determining the equitable distribution of the relevant marital assets. We disagree. Review-

ing the record, we find that the lower court properly adhered to the mandates set forth in section 401(d) of the Divorce Code in ascertaining the equitable distribution of the parties' marital assets.[5] We reject this argument, therefore, on the basis of the lower court opinions dated July 6, 1988 and July 24, 1989. Additionally, we do not agree with appellant's third contention concerning alimony. We also reject this argument of the basis of the lower court's opinions.

■ Finally, appellant argues that the lower court erred in failing to require husband to pay her counsel fees and expenses. We disagree. As noted by the lower court, the purpose of an award of counsel fees is to insure that a financially dependant spouse will be able to maintain or defend against an action for divorce as well as to effectuate economic justice between the parties. *Chaney v. Chaney,* 343 Pa.Super. 77, 493 A.2d 1382 (1985). We find no abuse of discretion with regard to the lower court's determination that both parties had ample assets with which to pay their attorney's fees. Since we find the logic proffered by the lower court convincing concerning this issue, we affirm on the basis of the lower court opinion dated July 6, 1988. We add, however, that appellant should note that counsel fees are not "automatic" and are "only appropriate when necessary to put the parties on a par in defending their rights or in allowing a dependent spouse to maintain or defend an action for divorce." *Johnson v. Johnson,* 365 Pa.Super. 409, 415, 529 A.2d 1123, 1126 (1987). Therefore, we reject appellant's contention concerning counsel fees.

5. We note, however, the lower court's inconsistent evaluation of appellant's prospects for future employment. In its opinion of July 6, 1988, the lower court characterizes appellant's future prospects for well paying employment as "slim, at best". In contrast, the lower court states in its July 24, 1989 opinion that appellant could find "suitable employment" in the future "since she has a talent that does not circumscribe her employable age." Nevertheless, we find no abuse of discretion with regard to the lower court's equitable distribution of the parties assets in light of its award and consideration of the mandates of section 401(d) of the Divorce Code.

Reversed in part, affirmed in part and remanded to the Court of Common Pleas of Delaware County, Civil Division for preparation and filing of an opinion not inconsistent with this opinion. The Court of Common Pleas is directed to act within forty-five (45) days of the filing date of this opinion. Panel jurisdiction is retained.

McEWEN, J., dissents.